[Civ. No. 32355.    Second Dist., Div. One.    Dec. 23, 1968.]

TILDEN W. JOHNSON, Plaintiff and Appellant, v. STATE BAR OF CALIFORNIA et al., Defendants and Respondents.

Tilden W. Johnson, in pro. per., Plaintiff and Appellant.

William F. Peters, Paul, Hastings, Janofsky & Walker and Oliver F. Green, Jr., for Defendants and Respondents.

FOURT, J.—This is an appeal from two judgments of dismissal after orders sustaining demurrers to an amended complaint without leave to amend.

In a complaint filed January 13, 1964, plaintiff brought an action against the State Bar of California, a public corporation (Hereafter referred to as State Bar and certain Does I through XXV). Plaintiff asserted that he had applied for admission to practice law in California in 1949 and that he had taken the first year law student examinations in 1949, 1950, 1951 and in 1953 and was not awarded a passing grade in any of said examinations. Further that in 1963 the Committee of Bar Examiners stated that all examinees who wrote "examination papers equaling 70% of the highest possible grade would be passed." That he, the plaintiff, paid an examination fee of $40 and a typing fee of $5 and again took the first

year law student examination in June 1963, that the State Bar declared that he had failed to pass that examination, that by virtue of an incorrect grading system his ''prestige'' has been damaged to the amount of $10,000, and that he was deprived of an opportunity to run for the office of district attorney of Los Angeles County to his damage in the sum of $76,000. For a second cause of action he alleged fraud upon the part of the State Bar in not giving him a passing grade, for a third cause of action he alleged negligence upon the part of the State Bar. Damages of over $100,000 were sought from the State Bar under the original complaint. No summons was issued until sometime in December 1964. The original complaint contains no allegation with reference to any conspiracy or agreement between the State Bar and any other person or organization.

A first amended complaint was filed on January 5, 1967. In the amended complaint plaintiff alleges that he is a graduate of the University of California at Los Angeles in business administration, that he has studied law through an extension or correspondence school and received good grades, that there was a ''breach of contract and/or warranty,'' that there is ''unfair competition and/or fraud'' and ''negligence and/or strict liability.'' The Harvard Club of Southern California, Hugh Darling, Samuel O. Pruitt, Jr., and A. Stevens Halsted, Jr., were brought into the action as Does I, II, III, and IV. It is set forth that Darling, Halsted and Pruitt are former members of the Board of Bar Governors of the State Bar. The purported first cause of action in the amended complaint is for a breach of contract. Paragraphs III, V and VI of this purported cause are hereinbelow set forth.[1]

---

[1] ''III

''It was discovered in 1966 that the Massachusetts Legislature in Chapter 173 of the Mass. Laws of 1865, and Chapter 132 of the Mass. Laws of 1889, and Chapter 204 of the Mass. Laws of 1921 changed the Charter of Harvard University originally granted in Oct. 28, 1636 in such a manner that since 1865, 1889, 1921 the Harvard Board of Overseers (Regents in California) are solely elected by the graduates of Harvard University thus in fact making each graduate of Harvard a Holder in Trust (Sec. 170 Calif. Code of Civil Procedure) of the now in 1966 approximately billion dollars of bonds, and stocks, specifically the $533,000,000 of common stock in hundreds of major U.S. Corporations including 20 major insurance companies. That Harvard apparently heads a syndicate of Universities likewise owning corporation stock, all apparently engaged in practicing law nationally for said corporations and their affiliated foundations, said universities furnishing thru their alumni associations and individual graduates free help for Local, State and National Bar Associations, in effect using said bar associations as local branch offices for the national practice of law and management of

The second cause of action is for fraud, the purported third cause of action is for negligence and the purported fourth cause of action is based upon alleged "unfair competition and/or unfair uses of foundations." Paragraph III of the

said corporations. Said Corporations business and payrolls being used to pay said ostensible free help.

"Therefore the Harvard Club of Southern California has been added as a DOE. Attorney Hugh W. Darling is thus a member or a recent member of the State Bar Board of Governors, Likewise attorneys A. Stevens Halsted, Jr., and Samuel O. Pruitt.

"Attorney Darling is also listed as an alumnus of the University of Southern California, part of the apprent [sic] Harvard syndicate, and Attorney Pruitt, Jr. is an almunus [sic] of Harvard and presumably of the Harvard Club. Attorney Halsted, Jr. is listed as an alumnus of Harvard and also as an alumnus of Stanford University apparently part of the aforesaid Harvard syndicate furnishing purported free help to Bar Associations as aforesaid in restraint of competition or unfair competition and/or use of foundations and bar associations to implement their control of a national industrial trust or what so appears. The Harvard Club is located at 816 Fifth St., Los Angeles, Calif., 90017—phone MA 9-1877."

"V

"The State Bar of California is a Public Corporation created by the California Legislature by the State Bar Act of 1939 adding Chapter 4, comprising Sections 6000 thru 6154, Div. III of the Business and Professions Code delegating police supervisory powers to the said State Bar. The State Bar has perpetual succession and a seal, and it may contract, sue and be sued, and so may its committees and members thereof.

"The State Bar is composed of the licensed attorneys of the State of California and governed by a Board of Governors elected by said attorneys. It maintains offices at 601 McAllister St., San Francisco, 2, Calif., and at 1230 W. Third St., Los Angeles, Calif. 90017"

"VI

"One of the public duties of the said State Bar and its Committee of Bar Examiners is to make character investigations of applicants to practice law and to make non-binding recommendations of the educational and experience qualifications of applicant's to practice law in California. The Business and Profession's Code, Section 6060, (h) and (i) specify only that the applicant must pass examinations given by the committee unless the Supreme Court overrules the Committee and admits the applicant to practice without passing the Committee examination. Section 6065 of the said Bus. & Professions Code provides the committee must permit the applicant to inspect the grading of his examination papers whether marked on the examination or otherwise. However so far as the state law reads the Committee may require the examinee in order to pass to turn in an examination paper equal to over 99% of the best possible performance. Thus the Supreme Court in Re 1 C2d 61 [33 P.2d 829], Salot v. State Bar 3 C2d 615 [45 P.2d 203]; Staley v. State Bar 17 C2d 119 [109 P.2d 667], and in Johnson v. State Bar, L.A. 27631 has ruled in effect that unless the State Bar is first sued in breach of contract of its promise in its Rules Regulating Admission to Practice Law, Sec. 63 that it will give a fair examination and fairly grade same and pass all applicants whose examinations equal 70% of the highest possible grade and thus have the Superior Court interpret said sections and award damages or specific performance or establish unfairness and/or fraud, the Supreme Court will not inquire into an applicant's inability to pass an examination that other applicant's [sic] passed."

purported first cause of action which is incorporated by reference into the second, third and fourth purported causes of action contains the only allegations with reference to the defendant Harvard Club. Paragraph II of the purported fourth cause of action is as hereinbelow set forth.[2]

On February 10, 1967, the State Bar, Harvard Club and the three individual defendants filed separate general and special demurrers to the amended complaint. We shall confine ourselves mainly to the general demurrers wherein it is asserted that the amended complaint does not state facts sufficient to constitute a cause of action versus any of the defendants, for we are persuaded that plaintiff did not and cannot state a cause of action against any of the defendants.

The trial judge succinctly stated it in his ruling:

"On June 24, 1963, after paying the necessary fees, he again took the first year law student examination. The *gravamen* of plaintiff's complaint against the State bar arises out of his interpretation of Business and Professions Code, Section 6068 subsection 63 which provides that in first year examinations 'the passing grade shall be 70% of the highest possible grade.' The State Bar argues that the 'highest possible grade' would be 100%. The plaintiff earnestly askes this Court to consider that 100% is not a 'possible grade'; instead asks the Court to assume that 80% was the highest possible grade. Since the plaintiff obtained a score of 61.875% at the June 24, 1963, examination, 'plaintiff had actually performed

---

[2]"Plaintiff refers to Sections 17001 thru 17519 and especially and also section 16702, 16720, *16725*, 16757, of the California Business and Professions Code and Unfair Use of Foundations, U.S. 83rd Congress 1954 Foundations Report 2681 and alleges from information and belief that defendants and each of them are engaged in prohibited actions such as a syndicate of universities headed by Harvard University Alumni's Billion Dollar endowment fund management are in effect using bar associations as branch offices to represent university trusts, and private foundations and the corporations whose stock is held in part by said organizations in legal and political actions.

"That in pursuance of this design said university alumni and/or alumnus defendants and each of them herein are competing unfairly with plaintiff relative to the use of legal education and training whereby said university alumni and alumnus advocate and establish bar associations most of whose officers are to work free so that said associations will be dependent on said alumni and/or alumnus furnishing free help, whereby said free help use their positions to exclude competition as set forth herein and then use federal, state, and local civil service payrolls, etc. and corporation business and payrolls to indirectly pay the personnel furnished purportedly free to said Bar Associations damaging plaintiff in the sums set forth herein in Paragraphs XIV thru XVIII of the first cause of action by substituting for "breach of contract" facts set forth in this 4th cause of action. Plaintiff is further damaged in the sum set forth in separate cause Three herein."

61.875/80 or *77.3%* of the highest possible grade.' By this reasoning, plaintiff reaches the conclusion that he had attained a grade over 70% and therefore should have been passed.

"      .      .      .      .      .      .      .      .      .      .      .      .

"Plaintiff has asked to leave to amend. However, since the questions involved in the complaint are solely matters of law, the benefits to be gained by the plaintiff by further amendment are purely illusory. If plaintiff desires to have his novel interpretation of the 70% rule of B. & P. Sec. 6068(63) ultimately resolved by the highest courts in this State, his record on appeal will best be made a definite and final ruling of this Court at this time. The demurrers of the defendants will therefore be sustained without leave to amend and the motions to strike ordered off calendar. Counsel for defendants are to prepare judgments in accordance with this opinion."

The judgment of dismissal was entered on March 6, 1967, with reference to Harvard Club of Southern California and the judgment of dismissal with reference to State Bar of California, A. Stevens Halsted, Jr., Samuel O. Pruitt, Jr., and Hugh W. Darling was entered on March 7, 1967.

Rules Regulating Admission to Practice Law are set forth in the Business and Professions Code following section 6068. Rule VI, § 63 thereof states: "The first-year examination shall be conducted either by the committee or under its supervision or pursuant to its direction each year simultaneously in Los Angeles and in San Francisco, beginning on the last Monday in June. The examination shall be written, and shall consist of such questions as the committee may select on the subjects of contracts, torts, and criminal law. The passing grade shall be seventy per cent (70%) *of the highest possible grade.*" (Italics added.)

Plaintiff argues in effect that the words of the rules do not mean what they state. He insists that the "highest possible grade" is the highest grade actually attained by any applicant in any one examination series. The requirement is clearly that a person to pass must receive a grade of seventy percent of the highest *possible* grade. It may be improbable but it is *possible* to secure a grade of one hundred percent. In short, plaintiff contends that the standards should be lowered. We are convinced that no such meaning was intended and that the words cannot be so interpreted. It is readily apparent that plaintiff's entire purported case is based upon his erroneous interpretation of the clear meaning of the rules.

Plaintiff does not allege any facts to show wherein or how

there was any malice, fraud or corruption unless it be in the use of the ''seventy percent of the highest possible grade'' rule. Specific facts must be alleged and this the plaintiff has neglected to do. See *Norkin* v. *United States Fire Ins. Co.,* 237 Cal.App.2d 435, 437 [47 Cal.Rptr. 15], where it is said: ''Initially it is to be noted that 'It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions.' [Citation.] 'The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or ''scienter''); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.' [Citation.] It is not necessary to consider whether plaintiff has sufficiently pleaded the latter four elements of fraud, for it is clear that he has not sufficiently alleged the first element, namely, a false representation.''

The three individuals, all former members of the Board of Bar Governors, are not alleged to have had anything to do with the examinations which plaintiff took and failed. There is no charging allegation specifically stating what any particular person did or did not do.

Nowhere is it alleged that the Harvard Club, a California nonprofit corporation has taken any action against plaintiff.

It is true that the trial judge mentions in his ruling that he sustained the demurrer of the Harvard Club for the reason that the statute of limitations had run. ■ The rule, however, is that if the general demurrer should have been sustained upon any of the grounds urged, the judgment should not be reversed. It is the validity of the court's action in sustaining the demurrer which is here under review and not the court's opinion or stated reason for its action. (See *Irwin* v. *City of Manhattan Beach,* 65 Cal.2d 13, 20 [51 Cal.Rptr. 881, 415 P.2d 769]; *Ostrowski* v. *Miller,* 226 Cal.App.2d 79, 85-86 [37 Cal.Rptr. 790]; *Straughter* v. *Safety Sav. & Loan Assn.,* 244 Cal.App.2d 159, 162 [52 Cal.Rptr. 871]; *Weinstock* v. *Eissler,* 224 Cal.App.2d 212, 224 [36 Cal.Rptr. 537]; *Heyer* v. *Flaig* * (Cal.App.) 67 Cal.Rptr. 92.)

■ The heart of plaintiff's whole theory in this case is that

*A hearing was granted by the Supreme Court on May 9, 1968. The opinion of that court is reported in 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161].

the 70 percent rule was wrongly interpreted by the State Bar and therefore he has been damaged. So long as he adheres to his interpretation of the rule he cannot possibly state a cause of action for his whole claim is based on a false premise. Nor should we inquire, even if we were entitled to do so, into appellant's inability to pass the examination which was successfully passed by others. In short appellant seeks the "legally impossible." The court under the circumstances properly sustained the demurrers without leave to amend. (See *Addiego* v. *Hill*, 238 Cal.App.2d 842, 845-846 [48 Cal. Rptr. 240]; *Kiang* v. *Strycula*, 231 Cal.App.2d 809, 810 [42 Cal.Rptr. 338]; *Robinson* v. *Robinson*, 198 Cal.App.2d 193, 197 [17 Cal.Rptr. 786]; *Evarts* v. *Jones*, 170 Cal.App.2d 197, 205-206 [338 P.2d 627].)

██  No facts and circumstances are set forth which constitute fraud upon the part of the Harvard Club. The general demurrer as to the Harvard Club in any event was properly sustained. See *Lesperance* v. *North American Aviation, Inc.*, 217 Cal.App.2d 336, 344-345 [31 Cal.Rptr. 873], where it is stated: "Apropos the sufficiency of a pleading in fraud actions are the observations of Mr. Witkin in 2 Witkin, California Procedure, page 1327: 'Fraud actions have been classed as "disfavored," and are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded. The effect of this rule is twofold: (a) General pleading of the legal conclusion of "fraud" is insufficient; the facts constituting the fraud must be alleged. (2) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings (see *supra*, § 209) will not ordinarily be invoked to sustain a pleading defective in any material respect.' The elements of a cause of action for damages for fraud and deceit are: (1) Representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; (5) reliance and resulting damage (causation). [Citation.] In order to state a cause of action it is necessary for a plaintiff to allege facts which show the existence of each of these elements. Plaintiff has failed to meet this essential requirement." (See also *Allen* v. *Ramsay*, 179 Cal. App.2d 834, 848 [4 Cal.Rptr. 575].)

██  Finally plaintiff complains that Judge Robert W.

Kenny was in effect a party in interest. The declaration filed does not assert that the judge was a member of the Harvard Club or a graduate of Harvard but appellant does set forth that the judge attended the Univerisity of Southern California and the law school at Stanford University. The court properly reviewed the declaration and found it insufficient as a matter of law and thereupon denied the motion to disqualify himself. (See *Evans* v. *Superior Court*, 107 Cal.App. 372, 376 [290 P. 662].)

It is fairly clear to this court that appellant herein for many years last past has engaged in vexatious litigation with reference as to whether he has passed the examinations given by the State Bar. See Supreme Court case numbered 22,135 filed in 1951 and case numbered 27,631 filed in 1963 and the repeated petitions to the State Bar. Appellant failed to pass the required beginners' examination in 1963 and on at least several other occasions. No amount of torture to the plain language of the pertinent law can change the situation. Appellant cannot state a cause of action against the named respondents, or any of them, for damages, relief or otherwise in this matter for his predicament is brought about solely from his own deficiencies and not from any action or otherwise of the respondents.

The judgments are and each of them is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 20, 1969, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1969.