[Civ. No. 53880. Second Dist., Div. Five. May 9, 1979.]

DONALD S. ENGEL, Plaintiff and Appellant, v.
KENNETH D. McCLOSKEY, as Administrator, etc., et al.,
Defendants and Respondents.

## COUNSEL

Donald S. Engel, in pro. per., and Engel & Engel for Plaintiff and Appellant.

Reilly, Denver & McLain, Arthur M. Reilly, Herbert M. Rosenthal and Robert M. Sweet for Defendants and Respondents.

## OPINION

**ASHBY, J.**—Appellant Donald S. Engel appeals from an order of dismissal entered following the sustaining of respondents' demurrers without leave to amend. Appellant, an attorney who formerly practiced in New York, and who has since been admitted to practice in California, seeks damages from the State Bar of California, the Committee of Bar Examiners of the State Bar of California, and two named employees of the committee, for an allegedly unlawful delay in his admission to the California bar while his moral character was being investigated. The trial court held no cause of action was stated by the complaint.

According to the allegations of the complaint: from 1959 to 1975 appellant was a practicing attorney in New York and was at all times a member in good standing in the bars of the courts located in New York and at all times was of good moral character and scrupulously observed the canons of ethics and all moral and ethical considerations applicable to attorneys. In late 1975 he moved to California and applied as an attorney

applicant for admission to practice law in California. He successfully completed the attorney's examination and professional responsibility examination, with the results of his success thereon being published on April 13, 1976.

On May 25, 1976, appellant learned that the Committee of Bar Examiners had received information from one George Galland which was delaying appellant's admission to the bar. After speaking with Galland, appellant sent to the committee an extensive affidavit dated June 2, 1976, which contained a detailed explanation of all the facts known to appellant about what he had gleaned to be the nature of the problem, including numerous exhibits. Appellant received no communication from the committee. On June 18, 1976, appellant sent a cable to respondent Kenneth McCloskey, the administrator of the Committee of Bar Examiners in San Francisco, requesting information on the status of his application, but received no reply. Appellant thereafter secured a copy of a letter of April 30, 1976, from Galland to the committee "which contained a patently misleading reference to 'trust property.'" After repeated unsuccessful attempts to reach respondent Patricia Lobello, the associate administrator of the Committee of Bar Examiners in Los Angeles, appellant wrote to her on July 12, 1976, with a copy to respondent McCloskey, complaining of the delay and supplying additional information in response to the contents of Galland's letter. On July 14, 1976, appellant telephoned respondent McCloskey and learned that the committee had received appellant's affidavit of June 2 and letter of July 12. McCloskey stated that it was his responsibility together with respondent Lobello to make a preliminary determination whether appellant was to be admitted forthwith or whether a hearing by the committee would be necessary. Appellant supplied additional information to McCloskey by letter of July 16.

Having heard nothing for another month, appellant telephoned McCloskey on August 13, 1976, and was told McCloskey would get to the matter within the week. On August 24 appellant again telephoned McCloskey and was told there would be further delay. McCloskey told appellant he had spoken with Galland on the telephone and McCloskey explained to appellant Galland's theories of wrongdoing by appellant. McCloskey related to appellant what he thought would "satisfy" Galland and suggested that appellant call Galland. Appellant refused, saying he would not be "blackmailed" into paying money to Galland.

Having heard nothing further about his application, appellant commenced a mandamus action against respondents on September 2, 1976.

Appellant alleges on information and belief that in retaliation for appellant's filing of a mandamus action, respondent McCloskey decided not to recommend that appellant be admitted forthwith but instead to convene a hearing before a subcommittee of the Committee of Bar Examiners.

On October 14, 1976, said hearing was commenced before a three-member subcommittee of the Committee of Bar Examiners. The examiner appointed by the committee to present evidence introduced into evidence only two informal unsworn letters from Galland, the affidavits and exhibits provided by appellant on June 2, and appellant's letter of July 16 with two enclosures. Appellant introduced into evidence approximately 30 documents consisting for the most part of the aforementioned affidavit and letter and enclosures plus other documents which had previously been presented to counsel for the committee.

At the hearing, the subcommittee members unanimously decided that the letters written by Galland did not contain allegations which, even if proved, would be sufficient to cause appellant to be denied admission to practice law, and that the allegations related only to a commercial dispute between appellant and Galland based on a previous relationship in the practice of law. The subcommittee members were of the opinion that appellant's admission had been inordinately delayed, and were critical of the staff for being less than diligent in clarifying the nature of the complaint, for having taken six months, and for not having the case prepared even after that length of time. Nevertheless, the subcommittee granted the examiner a three-week adjournment to secure additional evidence by deposition.

Two days before the scheduled adjournment date (presumably, early November), appellant learned that the examiner had notified the chairman of the subcommittee he had no further evidence and that the chairman had canceled the adjourned hearing. The subcommittee "thereafter" issued its findings, based on information available since July of 1976, concluding " 'The allegations made do not appear to involve any violation of trust, but seem to be a dispute between former law partners in the state of New York over allocation of fees and reimbursement for costs advanced by one of them or the other on behalf of clients of one or the other, and in no way involved trust funds' " and recommending appellant's admission to the California bar. Appellant was finally admitted to the California bar on January 25, 1977.

Appellant seeks damages[1] for his delayed admission to the bar from McCloskey, Lobello, the Committee of Bar Examiners, and the State Bar, based on five asserted causes of action:

*First Cause of Action* (*"Failure to Discharge Statutory Duty"*). Respondents violated a mandatory duty imposed by rule X, section 102, of the State Bar rules regulating admission to practice law in California, adopted pursuant to Business and Professions Code section 6047.

*Second Cause of Action* (*"Breach of Contract"*). Respondents violated a contract arising out of appellant's executed application for admission and payment of the required fee, by which respondents were impliedly obliged to process appellant's application with reasonable diligence and competence.

*Third Cause of Action* (*"Negligence"*). McCloskey and Lobello negligently and incompetently failed to perform a duty promptly to complete the initial investigation and make a recommendation to the committee whether appellant should be admitted forthwith or a hearing should be held. Specifically they failed to make an appropriate investigation, failed to perceive that the charge even if true would not be grounds for denying admission, failed to perceive that the overwhelming weight of evidence proved the charge false, scheduled a hearing where there was no probable cause for such a hearing, failed to make rudimentary effort to secure competent evidence, and failed to act with reasonable dispatch.

*Fourth Cause of Action* (*"Violation of Constitutional Rights"*). Respondents failed and refused adequately to inform appellant of the charges, to supply appellant with copies of the evidence on which the investigation was based, and to afford appellant the right of confrontation and cross-examination, and respondents scheduled a hearing while having no competent evidence of any kind. This deprived appellant of due process and equal protection.

*Fifth Cause of Action* (*"Blackmail, Coercion and Intentional Infliction of Emotional Harm"*). McCloskey and Lobello intentionally delayed the initial investigation and intentionally convened the hearing in retaliation for appellant's commencement of a mandamus action. McCloskey and Lobello wilfully colluded with Galland to blackmail and coerce appellant to pay money to Galland.

---

[1] Loss of income and incurring of additional expenses from not being able to begin practice in California, $175,000; physical and emotional harm, $200,000; exemplary damages, $500,000.

We hold the trial court correctly determined that no valid cause of action was stated in the complaint.

### FIRST CAUSE OF ACTION—NO BREACH OF MANDATORY DUTY

Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against a risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

■ Appellant contends that rule X of the State Bar Rules Regulating Admission to Practice Law in California[2] imposes a mandatory duty upon the Committee of Bar Examiners, within the meaning of Government Code section 815.6, to complete its investigation of an applicant's moral character and to make a recommendation on certification within certain time limits, and that appellant has a cause of action for breach of that mandatory duty. Our analysis of rule X shows that it was not breached in this case and that it does not impose a mandatory duty within the meaning of Government Code section 815.6.

Rule X (which is composed of §§ 101 to 110) deals with the procedures for establishing that an applicant has good moral character, a prerequisite to admission to the bar. (Bus. & Prof. Code, §§ 6060, subd. (b), 6062, subd. (b).)[3] Sections 102, 105, 107, 108, and 110 set forth the times in which various steps in this procedure shall be completed. Relevant portions of those sections are described in the footnote.[4]

---

[2]The State Bar Rules Regulating Admission to Practice Law in California are found in Deering's California Codes Annotated Rules (1976 ed., 1979 cum.supp.) and in 3B West's Annotated Business and Professions Code (1974 ed., 1979 cum.supp.) following section 6068. In this opinion we quote the rules as amended February 25, 1976, found in the West's 1979 cumulative pocket part, following Business and Professions Code section 6069. The Deering's 1979 pocket supplement contains the more recent version of the rules operative December 1, 1978.

[3]It is the responsibility of the committee to certify to the California Supreme Court for admission those applicants who fulfill the requirements of admission. (Bus. & Prof. Code, § 6046.)

[4]Section 102(a) provides: "The committee shall complete an initial investigation of each applicant as to his moral character within sixty (60) days of publication of the results of the bar examination in which the applicant was successful. Initial investigations by the committee in reference to the moral character of applicants may be informal."

Section 102(b) provides in part: "If as a result of the initial investigation, the committee deems a hearing necessary before it should certify the applicant for admission, the committee shall notice a hearing, or refer the matter to a subcommittee to hold a hearing as provided for hereinafter."

Section 105 provides: "The hearing must be completed within ninety (90) days of the

To determine whether it was the intent of the framers of rule X to impose a mandatory duty within the meaning of Government Code section 815.6 we must look at the entire substance of the rule. (*Tripp* v. *Swoap,* 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749]; *Anderson* v. *City of Los Angeles,* 30 Cal.App.3d 219, 224 [106 Cal.Rptr. 299]. See *Morris* v. *County of Marin,* 18 Cal.3d 901, 910-911 fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606].)

Section 110 of rule X provides: "For good cause shown the chairperson or acting chairperson of the committee may extend any of the time limitations specified in Rule X . . . ."

Section 110 shows that the various time limits in rule X are not inflexible or mandatory. They may be extended for *discretionary* reasons. The existence of such discretion prevents the duty from being a mandatory (nondiscretionary) one.

In any event, it does not appear that the time limits in rule X were actually violated in this case. Appellant's bar examination results were

giving of the notice to the applicant pursuant to Section 102(b) hereof."

Section 107 provides in part: "If the matter is heard by the committee, the report of the committee shall be made and notice thereof given pursuant to Rule I, Section 9 within sixty (60) days of completion of the hearing."

Section 108 provides that if the matter is heard by a subcommittee: (a) the subcommittee shall transmit to the committee its report within 60 days after completion of the hearing; (b) when the report is received at the office of the committee, notice and a copy shall be sent to the applicant, to the examiner, and to each committee member within 7 days of such receipt; (c) the findings of the subcommittee shall be conclusive on the applicant and the committee, and shall be deemed accepted and adopted by the committee as its decision, at the expiration of 60 days from the mailing of the notice referred to in paragraph (b), unless the committee, the examiner or the applicant elect to proceed pursuant to section 108(d).

Section 108(d) provides that within 60 days after mailing of the notice provided in section 108(b) either the committee or the applicant may elect or the examiner may request to have the matter set for hearing before the committee and the applicant or the examiner may apply to present additional evidence. Under section 108(e)(1), upon the applicant's or committee's election to have the matter set for hearing before the committee, the committee shall set a date for hearing within 60 days therefrom.

Under section 108(d) if the committee determines that presentation of additional evidence is to be permitted, it may schedule a hearing before the committee or refer the matter to a hearing subcommittee, and for purposes of determining the time within which a hearing for the presentation of additional evidence must be held and a report made or decision reached thereafter, the notice that such a hearing is to be held will be considered the same as an original notice of hearing given to an applicant pursuant to section 102(b).

Under section 108(e)(4) the decision of the committee shall be made and notice thereof given to the applicant and the examiner within 60 days of the completion of the hearing.

Section 110 provides: "For good cause shown the chairperson or acting chairperson of the committee may extend any of the time limitations specified in Rule X except the time limits set forth in subsection (c) of Section 109 which may be extended only by action of the committee for good cause shown."

published on April 13, 1976, and appellant was apparently certified for admission in November 1976, about seven months later. The final decision was well within the limits provided by rule X, even without allowing for any extensions of time. This is shown by the following table.

| Procedural Step | Number of Days Allowed | Section Number of Rule X |
|---|---|---|
| Initial investigation | 60 | 102(a) |
| Completion of hearing | 90 | 102(b), 105 |
| Subcommittee report to committee | 60 | 108(a) |
| Notice of subcommittee report | 7 | 108(b) |
| Decision of committee based on subcommittee report | 60 | 108(c) |
| Total allowable days from bar examination results to committee decision based on subcommittee report[5] | 277 | |

Appellant argues that the "initial investigation" took over 60 days and that this must have delayed the subsequent steps in the process, but the fact remains that the final decision was well within the time allowed by the rule. Appellant's argument that his case *could* have been determined sooner may well have relevance to his other causes of action, but he has failed to establish an actual violation of rule X.

There was no failure to discharge a mandatory duty within the meaning of Government Code section 815.6.

### THIRD CAUSE OF ACTION—NEGLIGENCE—IMMUNITY

■ In his third cause of action appellant alleges that the employees, McCloskey and Lobello, negligently and incompetently handled the investigation of appellant's good character.[6]

---

[5]Even more time would be involved if the committee permitted presentation of additional evidence (§ 108(d)) or if the time were extended (§ 110).

[6]The facts alleged are that: "(a) They failed to make an appropriate investigation and inquiry into the matter.

"(b) Upon learning facts and information from plaintiff and others, they failed to

The gathering and preliminary analysis of evidence concerning appellant's moral character are integral parts of the process leading to the grant or denial of appellant's certification to the California Supreme Court to be admitted to the bar. Government Code section 818.4 provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."[7]

If the employees negligently performed the investigation, they and the committee and State Bar are nevertheless immune from liability under these specific statutes. In conducting investigations of the moral character of applicants, the committee necessarily operates through employees. The gathering of evidence is an integral part of the committee's determination to certify to the Supreme Court that the applicant is of good moral character. (Bus. & Prof. Code, §§ 6046, 6049, 6060, subd. (b), 6062, subd. (b).)

---

perceive that the charges against plaintiff, even if proved, could not have resulted in his failure to be admitted to the Bar of the State of California.

"(c) They failed to perceive that the overwhelming weight of evidence in their possession proved said charges to be false.

"(d) They failed to act with reasonable dispatch so as to minimize the delay in plaintiff's admission and not cause unnecessary damages to plaintiff.

"(e) They acted in gross and wilfull disregard of the Bar Rules, specifically Sections 9 and 102.

"(f) They permitted incompetent and unqualified personnel to participate in the actual investigation process.

"(g) They failed to make even the most rudimentary effort to secure competent evidence about the charges against plaintiff instead proceeding for months and months on the basis of unsupported hearsay.

"(h) They permitted Galland to induce them to continue to delay plaintiff's admission to the Bar while failing to support his hearsay allegations against plaintiff with full knowledge that Galland had an economic motive for delaying plaintiff's admission to the Bar.

"(i) They presented to the subcommittee at the hearing an incompetent, grossly insufficient and unsupportable case which, in addition, violated plaintiff's rudimentary constitutional rights.

"(j) They scheduled and attempted to conduct a hearing before a subcommittee despite having in their possession such information as would enable any reasonable or competent person in similar circumstances to conclude that there was no probable cause for such a hearing."

[7]With respect to public employees, Government Code section 821.2 similarly provides: "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

An analogous case is *Whitcombe* v. *County of Yolo,* 73 Cal.App.3d 698 [141 Cal.Rptr. 189]. In *Whitcombe,* the plaintiffs were assaulted and severely injured by one Gibson while Gibson was free on bail after his arrest for a second offense occurring while he was on probation for a prior offense. Plaintiffs sought damages from Gibson's probation officers for failure or neglect to conduct an adequate investigation following the second arrest to determine whether Gibson was a danger to society and whether his probation should be revoked. (*Id.,* at p. 703.) The court held the employees were immune under Government Code section 845.8, subdivision (a), for "[a]ny injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." As to the allegedly inadequate investigation, the court stated: "[I]t appears to us patent that the acts complained of are integral to the ultimate basic policy decision not to revoke Gibson's probation." (*Id.,* at p. 713.)

Appellant contends the immunity is inapplicable to the employees because it is the committee (ultimately, the Supreme Court), not these employees, which is "authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." He argues as if the immunity attaches only to the committee's evaluation of whatever evidence is placed before it by the staff, and contends the staff function is only ministerial. This argument is not persuasive. The same could have been said in *Whitcombe,* since the court, not the probation officer, determines whether probation shall be revoked. *Whitcombe* nevertheless held the specific statutory immunity applicable because conducting the investigation was an integral part of that process. In this case also, the committee's determination must be based on its investigation and its investigation can only be conducted through its employees.

Appellant's own complaint alleges that McCloskey stated that it was his and Lobello's function to make a preliminary determination whether the investigation showed appellant should be certified forthwith or whether a hearing was necessary. This accords with what would reasonably be inferred even in the absence of such allegation, since in processing the thousands of applications for admission to the bar the committee would necessarily rely upon its staff to make a preliminary decision and recommendation as to which cases were routine and which cases required further study. We think that in such circumstances the immunity of sections 818.4 and 821.2 necessarily applies not merely to the final

recommendation to the Supreme Court but also to the earlier stages of the investigation conducted by the staff.

This case does not fall within the principle that the immunity of Government Code section 818.4 is inapplicable to *ministerial, nondiscretionary steps* in the licensing process *which steps themselves involve a mandatory duty within the meaning of Government Code section 815.6* (*Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 915). *Morris* involved the requirement of Labor Code section 3800 that a county, as a mandatory prerequisite of issuing a building permit, must obtain from the employer or contractor a certificate that he carriers workers' compensation insurance. No discretion whatsoever was involved in requiring or not requiring that certificate. Here, on the other hand, the manner in which the investigation was conducted and the conclusion whether further investigation or hearing was required involved substantial exercise of judgment. (See *Wyatt* v. *Arnot,* 7 Cal.App. 221, 228 [94 P. 86] [the decision as to when a case is ready to be decided involves as much judgment as how it is to be decided].)

Our determination that the investigation is an integral part of the licensing process makes it unnecessary to engage in any analysis under *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], of whether the investigation involved the "exercise of discretion" vested in McCloskey and Lobello for purposes of the *general* immunity for discretionary acts in Government Code section 820.2. (*Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d at pp. 712-713.) Instead, the *specific* immunity, section 818.4, controls. (*Id.*; *Stearns* v. *County of Los Angeles,* 275 Cal.App.2d 134, 136 [79 Cal.Rptr. 757].)

### SECOND CAUSE OF ACTION—NO CONTRACT

In his second cause of action appellant alleges that when he filed the forms supplied by the committee and paid the required fee, a contract between him and the committee arose, an implied obligation of which was that the committee would process his application in a timely and competent manner. There is no merit to this cause of action. If an application for a license or permit and payment of the required fee created a contract that the application be handled in a certain manner, the immunity provided by Government Code sections 818.4 and 821.2 would be nullified. In receiving such an application, the public entity obviously lacks contractual intent.

### FOURTH CAUSE OF ACTION—NO VIOLATION OF
### FEDERAL CONSTITUTIONAL RIGHTS

■   Citing *Willner* v. *Committee on Character,* 373 U.S. 96 [10 L.Ed.2d 224, 83 S.Ct. 1175], appellant contends his fourth cause of action states a valid complaint for violation of his federal constitutional rights in alleging that he was not adequately informed of the charges, or given copies of the evidence available to the committee, or given the right to confront Galland. *Willner* stands for the proposition that before a person may be deprived of the opportunity to practice law on the basis of charges by a person whose reliability and veracity is brought into question by the applicant, he must *at some stage of the proceedings* be given adequate notice of the reason for rejection, a hearing, and adequate opportunity to rebut the charges, including the right of confrontation and cross-examination where appropriate. (*Id.,* at p. 105 [10 L.Ed.2d at pp. 230-231] [opinion of the court], pp. 107-108 [10 L.Ed.2d at pp. 231-233] [conc. opn. of Goldberg, J.]; cf. *Walter* v. *State Bar,* 2 Cal.3d 880, 890-891 [87 Cal.Rptr. 833, 471 P.2d 481].)

In this case, appellant had a hearing before a subcommittee of the State Bar which resulted in the favorable determination that appellant was of good moral character and should be certified for admission. Nothing in *Willner* suggests that information as to the nature of the charges or the right of confrontation must be granted *while the investigation is still being conducted.* Disguising the complaint as a federal civil rights action only obscures the real gravamen of appellant's claim, which is that the committee violated a mandatory duty to complete the investigation within a certain amount of time.

### FIFTH CAUSE OF ACTION—NO "BLACKMAIL"—
### INSTITUTION OF ADMINISTRATIVE PROCEEDINGS

■   In his fifth cause of action appellant attempts to allege more than negligence and that the employees intentionally wronged him in two respects: (1) by attempting to "blackmail" appellant to pay money to Galland and (2) by convening an unnecessary hearing before the subcommittee in "retaliation" for appellant's filing of a mandamus action on September 2, 1976. Neither theory is valid in the particular circumstances of this case.

Appellant's allegations of "blackmail" are entirely conclusionary and lack the showing of specific facts from which McCloskey's intent to blackmail appellant could reasonably be inferred. *Kapellas* v. *Kofman,* 1

Cal.3d 20, 29 [81 Cal.Rptr. 360, 459 P.2d 912], and *Maidman* v. *Jewish Publications, Inc.,* 54 Cal.2d 643, 653-654 [7 Cal.Rptr. 617, 335 P.2d 265, 87 A.L.R.2d 439], stand for the proposition that where a defendant's immunity or privilege is apparent from the face of the complaint, the plaintiff's allegations of actual malice to overcome the privilege must be supported by specific facts from which the trier of facts could reasonably conclude that the defendant acted for an improper motive unrelated to the privilege. (See also *Johnson* v. *State Bar,* 268 Cal.App.2d 437, 444 [74 Cal.Rptr. 11] [facts constituting "fraud" must be alleged specifically]; *Selby Realty Co.* v. *City of San Buenaventura,* 10 Cal.3d 110, 127 [109 Cal.Rptr. 799, 514 P.2d 111] [allegations of collusion unsupported by specific facts showing any actionable wrong add nothing to a complaint].) In *Kapellas* and *Maidman,* the plaintiffs alleged detailed facts showing a long history of animosity between the parties from which an improper motive for the publication of privileged defamatory matter could reasonably be deduced.

Here the only specific fact remotely suggestive of the "blackmail" theory is that on August 24, 1976, when appellant telephoned McCloskey, "Defendant McCloskey told plaintiff that he had spoken with Galland on the telephone and explained to plaintiff Galland's theories of wrongdoing by plaintiff. Defendant McCloskey then related to plaintiff what he thought would 'satisfy' Galland and suggested that plaintiff telephone Galland. Plaintiff refused, stating that, as important as his admission was, he would not be blackmailed into paying money to Galland and asked if the Committee was acting as a collection agency for Galland. Defendant McCloskey denied that he intended that result and suggested that defendant forward to Galland some inconsequential documents." The facts alleged show that McCloskey denied any improper intent and do not reasonably justify appellant's characterization of them as "blackmail."

With respect to the "retaliation" theory, the complaint alleges the following facts: Appellant filed a mandamus action on September 2, 1976, and McCloskey was served with the petition on September 3. Later that day McCloskey telephoned appellant and "made statements substantially as follows: [¶] (a) He (defendant McCloskey) had not read the Petition to avoid prejudicing him against plaintiff about whom he had to make some decision. [¶] (b) After his discussion with [a certain witness], he was of the opinion that he could probably get the matter of plaintiff's admission resolved rather readily. [¶] (c) He contemplated not even calling plaintiff because plaintiff brought an action he did not have to bring. He would play the litigation game though he did not want to, but

plaintiff was welcome to do so." The complaint further alleges on information and belief that after having been served with the petition McCloskey made the decision "to recommend that plaintiff not be admitted forthwith but, instead, to convene a hearing before a subcommittee of the Committee" and "decided to conduct a hearing in retaliation for the exercise by plaintiff of his right to bring a mandamus action."

The facts labeled (a) and (b) contradict any improper intent. On the other hand, an adverse inference as to McCloskey's intent might *possibly* be drawn from his statement that he "would play the litigation game" and the fact that the matter was not "resolved rather readily" as stated in the conversation.

Even assuming, for purposes of discussion only, that a retaliatory motive might reasonably be inferred, the conduct involved is that McCloskey convened, or caused to be convened, a hearing before a subcommittee of the Committee of Bar Examiners. In other words, McCloskey instituted an administrative proceeding against appellant. Such conduct is specifically immunized by Government Code section 821.6, which provides: "A public employee is not liable for injury caused by his *instituting* or prosecuting any judicial or *administrative proceeding* within the scope of his employment, *even if he acts maliciously and without probable cause.*" (Italics added.)

The legislative committee comment to section 821.6 provides: "The California courts have repeatedly held public entities and public employees immune from liability for this sort of conduct. Dawson v. Martin, 150 Cal.App.2d 379, 309 P.2d 915 (1957) (public entities). White v. Towers, 37 Cal.2d 727, 235 P.2d 209 (1951); Coverstone v. Davies, 38 Cal.2d 315, 239 P.2d 876 (1952); Hardy v. Vial, 48 Cal.2d 577, 311 P.2d 494 (1957) (public employees). This section continues the existing immunity of public employees; and, because no statute imposes liability on public entities for malicious prosecution, public entities likewise are immune from liability." (Legis. com. comment—Senate; *Blackburn* v. *County of Los Angeles,* 42 Cal.App.3d 175, 177-178 [116 Cal.Rptr. 622].)

As expressly stated in the statute, this immunity applies to administrative as well as judicial proceedings. (*Hardy* v. *Vial,* 48 Cal.2d 577, 580-583 [311 P.2d 494].) The theory supporting such immunity is obviously that the administrative agencies regulating businesses and the professions in the public interest must be protected against suit in order to encourage fearless enforcement of their duties. (*Hardy* v. *Vial, supra,* 48 Cal.2d at

pp. 582-583. See also *Imig* v. *Ferrar,* 70 Cal.App.3d 48, 55-56 [138 Cal.Rptr. 540] [absolute privilege for defamation in instituting administrative proceedings].) The wisdom of the determination that the individual interest must give way to the public interest in law enforcement in such cases is not before us, since the Legislature has clearly made that choice in section 821.6.

We conclude no valid cause of action is stated in the complaint. The trial court properly sustained the demurrers.

The order of dismissal is affirmed.

Kaus, P. J., and Hastings, J., concurred.