[No. B027580. Second Dist., Div. One. Aug. 1, 1989.]

DOUGLAS SMITH, Plaintiff and Appellant, v.
THE STATE BAR OF CALIFORNIA et al., Defendants and
Respondents.

COUNSEL

Mark Rosenbaum, Carol A. Sobel, Litt & Stormer and Dan Stormer for Plaintiff and Appellant.

Diane C. Yu, Marie M. Moffat and Robert M. Sweet for Defendants and Respondents.

OPINION

**ORTEGA, J.**—Plaintiff Douglas Smith (Smith) appeals from the judgment following the trial court's sustaining of defendants' (California State Bar,

James B. Tippen, Jr., Sandra Abrams, and Vanessa Collier-Poe, hereinafter, State Bar) demurrer without leave to amend. Smith was unable to take the bar examination for which he registered and sued to compel the State Bar to transfer his fees to a subsequent test. Smith contends the trial court erred in sustaining the State Bar's demurrer and dismissing his action. We conclude the trial court's ruling was correct, and affirm.

### FACTS

On March 9, 1984, Smith was injured in an automobile accident and began medical treatment for his injuries. However, his symptoms failed to subside. On March 23, 1985, Smith applied to take the July 1985 bar examination as a first-time applicant and paid the $202 application fee. Smith received the State Bar's "Instructions for Applicants" which contained the following "Withdrawal Refund Schedule":

| Withdrawal Date | Refund |
| --- | --- |
| 2 weeks after filing | $65.00 |
| 4 weeks after filing | 55.00 |
| Prior to June 3 | 50.00 |
| Prior to June 28 | 40.00. |

The instructions also stated: "The above-mentioned refunds are the only refunds which will be made available to applicants. The Committee of Bar Examiners will not accept petitions for any further refund of fees. THERE IS NO PROVISION FOR THE TRANSFER OF APPLICATION FEES FROM ONE EXAMINATION TO ANOTHER."[1]

---

[1] Subsequently enacted Business and Professions Code section 6060.3, subdivision (b), provides in relevant part: "Application fees for the general bar examination . . . shall be refunded if the applicant does not take the general bar examination because of the death of an immediate family member or the serious illness or disabling injury of the applicant or a member of his or her immediate family. A deduction may be made from the refund for administrative costs. . . ."

The State Bar Board of Governors subsequently adopted a "Refund of Fees Policy" which established a withdrawal schedule with corresponding refund amounts. The policy provides that "[r]equests for refunds filed in excess of 45 days after the deadline for timely filing, by first time applicants, . . . will not be considered." (State Bar Refund of Fees Policy, Withdrawals, § 3 [23 West's Cal. Codes Ann. Rules, pt. 2 (1981 ed. 1989 cum. supp.) p. 405].) The policy further provides for a refund of 95% of all fees if an applicant is prevented from taking the examination because of "1. Death, serious illness or disabling injury of a member of the applicant's immediate family within 20 or less days prior to the administration of the subject examination; [¶] 2. Serious medically certifiable disabling illness or injury of the applicant that resulted in hospitalization, either of which occurred 30 days or less prior to the administration of the subject examination . . . ." (*Id.,* at Funereal or Physical Incapacity, §§ 1, 2.) Finally, the policy prohibits the transfer of fees from one examination to another.

In April, Smith learned that his mother had developed inoperable chronic serious heart disease. Meanwhile, his own symptoms worsened. In May, Smith learned he might have a brain tumor and began a series of diagnostic tests. These developments depressed Smith and affected his concentration, but he continued to study and intended to take the July examination. By June 28, however, Smith decided to try to transfer his application to a later test. He telephoned the State Bar but, when told he could receive only a $50 refund, decided to take the July examination for practice.

Between June 28 and July 16, Smith again changed his mind, went to the State Bar office, and was told he could petition to transfer his fees to a later examination. On July 16, Smith did so, explaining and documenting the events of the preceding 16 months, and requested transfer to the February 1986 examination "[i]f my health permits." On August 6, the State Bar wrote Smith that his petition had been fully reviewed and denied.

On August 24, Smith petitioned the State Bar to reconsider his request. Medical testing had continued through the July examination and disclosed Smith had multiple sclerosis. Smith indicated he might accept a refund rather than transfer of fees, requested a statement of reasons if his petition again were denied, and said he would appeal a renewed denial. On September 21, without explanation, the State Bar denied Smith's renewed petition for a refund or transfer of fees.

During October, Smith telephoned two State Bar employees, who agreed Smith could pay the repeater fees when he reapplied for a subsequent examination yet still be considered a first-time applicant. The employees also explained that the State Bar "did not give the reasons for [its] decisions . . . because it is [its] policy that the reasons for [its] actions, while written for [its] internal use, are not shown outside [it]. Similarly, the general rules upon which [it] relied are for internal use only and cannot be told or shown . . . , even though they are written."

Smith's timely claim with the State Bar was denied by operation of law. (Gov. Code, § 912.4.) Smith subsequently filed this action, alleging that the State Bar violated his federal and state due process rights and acted arbitrarily. He sought damages, attorneys' fees, and declaratory and injunctive relief. The State Bar demurred, claiming Smith should have sought relief in the state Supreme Court, its acts were protected by statutory and common law immunities, it could not be sued for civil rights violations, and Smith failed to allege sufficient facts to entitle him to relief. The trial court granted the demurrer without leave to amend on all grounds, and subsequently dismissed the action.

ISSUES

Smith contends the trial court erred in granting the demurrer and dismissing his action. Specifically, Smith contends (I) the trial court could not judicially notice the "Instructions for Applicants"; (II) he properly brought suit in the trial court rather than seeking relief in the state Supreme Court; (III) the State Bar was not shielded by statutory immunity; (IV) the State Bar was not shielded by judicial or legislative immunity; (V) the individual defendants were properly sued in a state civil rights action; and (VI) the State Bar's actions arbitrarily violated his rights.

DISCUSSION

I

■■■ The contention that the trial court could not judicially notice the "Instructions for Applicants" lacks merit. ■■■ In ruling on a demurrer, and on appeal from a judgment of dismissal following the grant of a demurrer without leave to amend, "the 'factual record' consists of the well-pleaded facts of the complaint, as well as those facts of which a court must or may take judicial notice. [Citations.]" (*Lebbos* v. *State Bar* (1985) 165 Cal.App.3d 656, 662, fn. 1 [211 Cal.Rptr. 847]; Code Civ. Proc., § 430.70.) The amended complaint alleged no facts regarding the quoted "Instructions for Applicants." However, in its demurrer, the State Bar sought, and Smith objected to, their judicial notice.[2] Smith did not contend the State Bar failed to comply with the requirements of Evidence Code section 453. The trial court did not expressly rule on the request.

■■■ Smith cites no authority and articulates no rationale supporting his bald assertion that the "Instructions for Applicants" could not be judicially noticed because they are neither governmental nor public entity regulations. On the contrary, numerous cases in other contexts have treated the State Bar as a governmental agency and its officers as public officers. (See *Keller*

---

[2] Evidence Code section 451 provides in relevant part: "Judicial notice shall be taken of the following: [¶] . . . . [¶] (b) Any matter made a subject of judicial notice by Section 11343.6, 11344.6, or 18576 of the Government Code . . . ."

Evidence Code section 452 provides in relevant part: "Judicial notice may be taken of . . . : [¶] . . . . [¶] (b) Regulations . . . issued by or under the authority of . . . any public entity in the United States. [¶] (c) Official acts of the . . . judicial departments of . . . any state of the United States."

Evidence Code section 453 provides: "The trial court shall take judicial notice of any matter specified in Section 452 if a party requests it and: [¶] (a) Gives each adverse party sufficient notice of the requests, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and [¶] (b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter."

v. *State Bar* (1989) 47 Cal.3d 1152, 1161-1167 [255 Cal.Rptr. 542, 767 P.2d 1020] (dues expenditures); *Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 563 [7 Cal.Rptr. 109, 354 P.2d 637] (evidentiary privileges); *Greene* v. *Zank* (1984) 158 Cal.App.3d 497, 502, fn. 3 [204 Cal.Rptr. 770]; *Engel* v. *McCloskey* (1979) 92 Cal.App.3d 870 [155 Cal.Rptr. 284] (Government Tort Claims Act applies to tort allegations against the State Bar; dismissal following sustaining demurrer without leave to amend affirmed where attorney applicant denied bar admission).)

Moreover, pronouncements of other agencies have been properly judicially noticed. (See 1 Witkin, Cal. Evidence (3d ed. 1986) § 98, pp. 84-85, and cases cited therein.) Indeed, if requested, this court could notice the instructions. Smith did not challenge the instructions' accuracy or allege he did not receive them. Thus, the instructions were properly subject to judicial notice.

## II

■ The contention that Smith properly brought suit in the trial court rather than seeking relief in the Supreme Court also lacks merit. Smith concedes the Supreme Court has "sole original jurisdiction" over the attorney admissions process. Again without citation to relevant authority, however, Smith claims such jurisdiction extends only to determining an applicant's fitness for bar membership and not to administration of admission fees.[3]

Both below and on appeal, the parties relied on some, and distinguished other, portions of *Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 557-559 [216 Cal.Rptr. 367, 702 P.2d 525]. In *Saleeby*, a client sought reimbursement from the State Bar-administered Client Security Fund (CSF) for losses allegedly incurred through his former attorney's misconduct. The State Bar recommended that the attorney be disbarred but, in a separate proceeding, awarded the client far less than his claimed loss. The client sought initial review through an original petition in the Supreme Court, which ordered the State Bar to reformulate the procedural rules governing CSF reimburse-

---

[3] Without reference to particular passages, Smith claims *Siegel* v. *Committee of Bar Examiners* (1973) 10 Cal.3d 156 [110 Cal.Rptr. 15, 514 P.2d 967], *Greene* v. *Committee of Bar Examiners* (1971) 4 Cal.3d 189 [93 Cal.Rptr. 24, 480 P.2d 976], and *Chaney* v. *State Bar of California* (9th Cir. 1967) 386 F.2d 962 support this proposition. None of these cases addressed or resolved facts or issues even remotely similar. *Siegel* and *Greene* involved original Supreme Court review through direct petition of refusals by the Committee of Bar Examiners to recommend admission of attorney applicants who passed the bar examination but were found lacking in moral character. *Chaney* affirmed dismissal of a civil rights suit brought by an applicant who failed the bar examination but challenged its use of essay exams. None of the cases mentioned fees or any difference between the Supreme Court's original jurisdiction over bar admissions and appellate review of lower court actions.

ment claims, permit the client a renewed hearing under the new rules, and consider his request for attorney's fees. However, the court required that future aggrieved claimants seek initial review through writ petitions in superior court.

The *Saleeby* court began its discussion of the appropriate forum for review of State Bar CSF decisions by describing the bar as " 'a public corporation created . . . as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys.' [Citation.] In those two areas, the bar's role has consistently been articulated as that of an administrative assistant to or adjunct of this court, which nonetheless retains its inherent judicial authority . . . . [Citations.] In the area of admission to practice, an applicant is admitted only by order of the Supreme Court which, upon certification by the bar's examining committee that the applicant fulfills the admission requirements, 'may admit such applicant as an attorney at law in all the courts of this State . . . .' [Citation.]" (*Saleeby* v. *State Bar, supra,* 39 Cal.3d at p. 557.)

The Supreme Court stated that "[d]eterminations and recommendations of the bar in matters of . . . admission are directly reviewable in this court. Rule 952 of the Rules of Court describes the means by which such review may be sought." (*Saleeby* v. *State Bar, supra,* 39 Cal.3d at pp. 557-558.) The court explained that the CSF was established not by the court, but at the instigation of the bar, which sought authorizing legislation "to create a remedy *in addition to* disciplinary measures and civil actions to reimburse clients for losses caused by the wrongful conduct of attorneys." (*Id.* at p. 558.) The court acknowledged that other states created such funds under their Supreme Courts' inherent power to supervise admissions and discipline, while in California "the CSF authorization was solicited from *the Legislature* by the bar itself and the powers related to establishing the fund were vested by statute in the bar rather than in this court and by the Legislature rather than by this court." (*Id.* at p. 559, fn. 2.)

The court held that "[b]ecause the grant or denial of reimbursement from the CSF does not involve discipline or admission of attorneys *and* there is no legislative requirement for direct review of such determinations here, we decline to hold that our direct review of such decisions is appropriate as a matter of course. . . . There is nothing in the allocation of CSF monies that necessarily would invoke our 'inherent' powers. *Unlike the bar's determinations regarding . . . decisions involving admission, the bar's power to grant or deny reimbursement is vested pursuant to powers directly granted by the Legislature.*" (*Saleeby* v. *State Bar, supra,* 39 Cal.3d at pp. 558-559; italics added.)

While at first blush *Saleeby* might appear to support Smith's position that his challenge to bar admission fees properly was brought in the trial court, the case compels a contrary conclusion. *Saleeby* found that CSF fee challenges should be brought in superior court rather than in the Supreme Court because, unlike the admissions process, the CSF was created at the State Bar's request, not by the Supreme Court under its inherent power to control admissions and discipline. *Saleeby* expressly distinguished the CSF from admissions. Thus, admission fee challenges should be initiated in the Supreme Court under its inherent power and original jurisdiction over the admissions process.

Smith also claims that, because admission fees are authorized by Business and Professions Code section 6063, their review should begin in superior court. In essence, he argues that, although the Supreme Court has sole original jurisdiction over the bar admissions process, the fact that admissions fees are also authorized by statute somehow eliminates the Supreme Court's control of the fees as part of its inherent power over admissions. As discussed in *Saleeby,* the argument lacks merit. The Supreme Court controls the admission process as part of its inherent power. Organization of a unified State Bar involved enactment of a comprehensive statutory scheme. However, that scheme established a public agency to administer admissions as an arm of the Supreme Court without diminishing the court's authority over admissions. Although annual membership fees for attorneys also are authorized by statute (see Bus. & Prof. Code, §§ 6140-6141), the Supreme Court reviews challenges to them in original petitions. (See *Hersh* v. *State Bar* (1972) 7 Cal.3d 241 [101 Cal.Rptr. 833, 496 P.2d 1201], which sustained a challenge to an increase in annual membership fees to fund the CSF.)

Smith also claims admission fees administration is preliminary to, rather than part of, the admissions process. Even if that distinction existed, it would not alter this analysis. Administration of admissions fees obviously is part of the admissions process. Applying *Saleeby,* we hold that challenges to the State Bar's admissions fees policies should be by original petition to the Supreme Court. Thus, the State Bar's demurrer properly was sustained without leave to amend, and the action properly was dismissed.

## III

As Smith's action properly was dismissed because his challenge to the State Bar's admissions fees policies should have been by original petition to the Supreme Court, we need not address his other contentions.

## DISPOSITION

The order sustaining the State Bar's demurrer without leave to amend and the judgment of dismissal are affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.