Filed 3/22/21  Wang v. City of Palo Alto CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JIM WANG et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF PALO ALTO,<br><br>    Defendant and Respondent. | H045716<br>(Santa Clara County<br>Super. Ct. No. 16CV298140) |

## I.  INTRODUCTION

Plaintiffs Jim Wang and Qingmin Wang sued the City of Palo Alto, alleging the city negligently approved the construction of a neighboring two-story residence with windows that overlooked plaintiffs' home and risked intruding on their privacy.  The city demurred to the operative second amended complaint for damages, contending that plaintiffs failed to timely present a government claim, that plaintiffs' sole cause of action for negligence was barred by the city's statutory immunity, and that administrative mandamus was plaintiffs' exclusive remedy.  The trial court sustained the demurrer without leave to amend on the ground that plaintiffs' negligence claim was barred by Government Code section 818.4,[1] which provides immunity to a public entity "for an injury caused by the issuance . . . of . . . any permit, license, certificate, approval, order,

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued . . . ." A judgment of dismissal was entered against plaintiffs.

On appeal, plaintiffs contend that the trial court erred in sustaining the demurrer without leave to amend on the ground that the city was immune from liability. Plaintiffs also contend that they sufficiently alleged the timely presentation of a government claim based on the doctrines of substantial compliance, equitable estoppel, and/or equitable tolling, and that the city is precluded from contending that they cannot seek relief due to their failure to pursue the remedy of administrative mandamus.

It is well established that governmental immunity under section 818.4 applies to discretionary decisions, such as the issuance of a building permit. " 'Under this section, for example, . . . a city is immune if it issues or refuses to issue a building permit, even though negligence is involved in issuing or failing to issue the order or permit.' " (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 920 (conc. opn. of Clark, J.) (*Morris*), italics omitted.) In this case, as we will explain, plaintiffs' negligence claim is barred by the immunity provided by section 818.4, and therefore we will affirm the judgment of dismissal.

## II. FACTUAL BACKGROUND

Our summary of the facts is drawn from the allegations of the second amended complaint and attached exhibits, since we must assume the truth of properly pleaded factual allegations in reviewing an order sustaining a demurrer. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Committee for Green Foothills*); *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 (*Lungren*); *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 (*Dodd*).)

Plaintiffs have lived in Palo Alto since 1999. The north side of their two-story residence has windows on the first and second floors.

Until 2013, the property next door, on the north side of plaintiffs' residence, contained a single-story structure. The structure did not contain any windows from which the occupants could look into the private areas of plaintiffs' home or into plaintiffs' backyard.

In February 2012, builders submitted a planning application to the city, seeking to build a new two-story residence on the property next door to plaintiffs' property. The application for the new residence included windows on the south side of the second floor.

An application to build a new residence "routinely trigger[s] an 'individual review' period lasting several months, during which the [c]ity and the [p]lanning [d]epartment as well as neighboring property owners" may review the application for any issues, including noncompliance with the city's planning policies or guidelines. Plaintiffs alleged that Palo Alto Municipal Code section 18.12.110, subdivisions (a) through (d), and city guidelines issued thereunder, required two-story homes to be designed to avoid intrusions into the privacy of neighboring property owners and imposed constraints on second-story windows to mitigate privacy impacts on neighboring homes.

Plaintiffs alleged that the application for the new residence depicted the new residence's south side windows as " 'double hung' and containing non-transparent etched or stained glass in the immovable bottom half . . . , thereby indicating that any risk was minimized if not avoided that private areas inside" plaintiffs' home or backyard could be seen from the windows of the new residence. Further, around February 2012, city planning officials and the builders personally assured plaintiff that there was no risk that the inside of plaintiffs' home or backyard could be seen from the southern windows of the new residence. Based on those assurances, plaintiffs did not oppose the city's preliminary approval of the application in mid-2012.

According to plaintiffs, the application "did not disclose" that the southern windows on the new residence were at a higher elevation than plaintiffs' northern windows, which created the risk that private areas inside plaintiffs' home could be seen

3

from the new residence. In late July 2013, after construction of the new residence was underway, plaintiffs "notice[d]" this "[e]levation [d]isparity." At that point, the framing of the new residence revealed the openings for the south side windows. On July 31, 2013, plaintiffs reviewed the application documents and found a "streetscape drawing . . . that concealed the intrusive impact" of the new residence's southern windows "by incorrectly portraying" the second floor of plaintiffs' home, including plaintiffs' north side windows.

Further, in August 2013, the builders installed "casement windows," which can be opened outward, rather than double-hung windows, which cannot be opened outward. As a result, "the non-transparent treatment of the bottom halves of the windows" would be ineffective in limiting the ability to look out of the new residence's south side windows and into the private areas of plaintiffs' home and backyard.

Beginning in July 2013, plaintiff Jim Wang (plaintiff Wang) continually complained to the city about the risk of intrusion that the new residence's south side windows posed to the private areas of plaintiffs' home and backyard. For at least 14 months, the city appeared "sympathetic" to plaintiff Wang's concerns and indicated that the city was exploring solutions, including by persuading or requiring the builders to make changes to the south side windows that would lessen the risk of privacy intrusion. Plaintiff Wang's communications with the city included the following:

On July 31, 2013, plaintiff Wang e-mailed a city planning official to complain that the application had misleadingly concealed the elevation disparity between the windows on the new residence and his windows.

In August 2013, plaintiff Wang complained to a city councilmember about the risk of privacy intrusion from the new residence's south side windows. The councilmember visited plaintiffs' home, expressed concern about the privacy issue, and promised to talk to top level city planning officials.

4

In October 2013, the vice mayor e-mailed plaintiff Wang that the city was addressing possible solutions to the privacy intrusion posed by the new residence's south side windows.

In November 2013, the assistant director of planning told plaintiff Wang that the city was continuing to look for a solution to the window problem without having to resort to a lawsuit.

In December 2013, plaintiffs discovered that the new residence's south side windows were approximately six inches greater in height than depicted in the application, which increased the opportunity to see into the private areas of plaintiffs' home and backyard.

On February 5, 2014, plaintiff Wang met with a senior assistant city attorney who indicated that the only legal remedy available to plaintiff was to file a complaint with the state licensing agency regarding the architect for the builders.

On February 11, 2014, a city planning official told plaintiff Wang that the city had given its final approval of the new residence that day. Plaintiff later discovered that the final approval was based in significant part on the city planning official's incorrect statement that the dimensions of the south side windows were the same, rather than larger, than the windows depicted in the application.

On February 21, 2014, plaintiff Wang again met with the vice mayor, who had since become mayor, to continue seeking a solution to the privacy issue. The mayor stated that she would have the city attorney and the city manager meet with plaintiff to explore what else could be done.

In April 2014, plaintiff Wang met with the city attorney and the city manager. The city manager took notes and promised to respond to plaintiff.

In May 2014, the city manager wrote to plaintiff Wang, stating that due to the city's recent final approval of the new residence, it would be difficult to get physical solutions for the south side windows. However, the city manager also stated that he

5

would visit plaintiff's home to explore the issue. The city manager visited plaintiffs' home in June 2014.

In September 2014, the city planning director visited plaintiffs' home. She believed "that the [c]ity should not pursue an audit of how the [n]ew [r]esidence had been constructed."

On October 6, 2014, at a city council meeting, plaintiff Wang urged that the city take action to fix the new residence's south side windows. A councilmember e-mailed the city manager, asking what the city would do to fix the issue.

On October 17, 2014, a city councilmember visited plaintiffs' home. The councilmember "opined" that the city would probably not take any action unless plaintiff Wang reiterated his October 6 remarks on an appropriate written form from the city, without specifying the written form.

On October 20, 2014, plaintiff Wang asked the city planning director about the appropriate form for his demand that the city fix the new residence's south side windows. The city planning director responded that she was unaware of such a form and advised plaintiff that he could write to her regarding the issue.

Plaintiff Wang subsequently found on the city's website a police complaint form, which was the only form he could find that was consistent with the form mentioned by the city councilmember. Plaintiff submitted three successive police complaint forms to the city planning director detailing the privacy intrusion issue posed by the new residence's south side windows and the missteps by city officials that contributed to the current noncompliance of the windows.

On November 19, 2014, the city planning director responded by letter to plaintiff. She wrote that she had investigated his written complaints and had "concluded that some mistakes occurred." She further determined that "there was no intent to mislead or other professional misconduct," and that the mistakes "did not rise to the level that would enable the City to force changes to be made to the house next to [plaintiff's] at this late

6

date." She explained, for example, that a city planning official "genuinely believed" the project plans provided for double hung windows although the window operation was not shown on the plans and there was no requirement at the time for the plans to indicate how the windows operated. The city planning official's belief was apparently "based on the fact that other windows shown on the plans were identified as casement windows, and the contested windows were not."

In January 2015, plaintiff Wang unsuccessfully filed a citizen complaint with the county grand jury regarding the city's handling of his privacy intrusion complaints. In September 2015, after a preliminary investigation, the grand jury informed plaintiff that it would take no further action and that he could pursue other remedies. When plaintiff asked a private attorney regarding the available remedies, Wang was told that he could pursue a claim for money damages against the city.

On October 8, 2015, plaintiff Wang hand-delivered a letter to the city planning director, stating that the city "should compensate for the lost house value and the need to reconstruct [plaintiffs'] house to restore the enjoyment of living with respect to privacy, noise, functionality, and neighborhood compatibility."

The planning director responded in writing, stating that plaintiff Wang needed to fill out the city's public entity claim form since he appeared to be seeking money for injuries allegedly caused by the city. She provided a Web link for the form and directions where to file the form.

On November 10, 2015, plaintiff Wang submitted a public entity claim against the city.

On November 13, 2015, the city rejected the claim as untimely.

### III. PROCEDURAL BACKGROUND

**A.** *The Pleadings*

On July 25, 2016, plaintiffs filed a civil complaint, alleging negligence against the city and two of its employees, and negligence and fraud against the builders. The city

7

and the builders demurred to the complaint, but the demurrers were taken off calendar after plaintiffs indicated their intent to file an amended complaint.

In the first amended complaint, plaintiffs again alleged negligence against the city and two employees, and negligence and fraud against the builders. The city and the builders again demurred. The trial court sustained the city's demurrer with leave to amend, on the ground that plaintiffs failed to adequately allege their timely presentation of a claim to the city and failed to adequately allege equitable estoppel or equitable tolling. Plaintiffs did not oppose the builders' demurrer, and the court sustained the builders' demurrer without leave to amend.

Plaintiffs filed a second amended complaint against the city and two employees alleging a single cause of action for negligence.[2] Plaintiffs alleged that the employees failed to use reasonable care in evaluating the application for the new residence and in "describing" the application to plaintiffs "in terms of [their] privacy interests" before preliminarily approving the application. Plaintiffs also alleged that the employees failed to evaluate and address the noncompliance of the new residence's south side windows with the preliminary approval previously given and the extent to which the windows risked intrusion into the private areas of plaintiffs' home and backyard. Plaintiffs alleged that the city was liable for its employees' conduct under the doctrine of respondeat superior.

## B. *The Demurrer to the Second Amended Complaint*

The city demurred to the negligence cause of action on the ground that plaintiffs failed to state facts sufficient to constitute a cause of action against the city or its employees. The city contended that plaintiffs' November 2015 government claim was not timely presented within one year after they were on notice in July 2013, of the new residence's second-story windows. The city also argued that equitable estoppel and

---

[2] The city employees apparently did not appear in the action below, and they are not parties to this appeal.

8

equitable tolling did not apply in view of the allegations in the complaint. The city further contended that a public agency and its employees have statutory immunity for a claim for damages based on negligent inspection, failure to enforce an ordinance, and issuance of building approvals. Lastly, the city argued that plaintiffs' claim was barred because a petition for writ of mandate was the exclusive remedy for challenging the city's administrative action.

### C. *Opposition to the Demurrer*

In opposition, plaintiffs contended that the letter they delivered to the city on October 8, 2015, demanding monetary relief "substantially complied" with the city's claim procedures. Plaintiffs alternatively argued that the letter should be deemed a " 'claim as presented,' " and that the city waived the right to raise any deficiencies in the letter. Plaintiffs further contended that the letter was timely based on equitable estoppel or equitable tolling. Plaintiffs also argued that defendant and its employees were not immune from damages because governmental immunity applied only to discretionary decisions. According to plaintiffs, the city was "required" by ordinance and implementing guidelines "to assure compliance" with "tightly detailed design criteria to protect the privacy of neighboring homeowners before the plans can be approved through the issuance of building permits." Plaintiffs also contended that they were not barred from seeking relief based on the purported availability of the remedy of administrative mandamus.

### D. *Reply in Support of Demurrer*

In reply, the city reiterated that plaintiffs' government claim was untimely. The city also contended that plaintiffs' October letter did not substantially comply with the Government Claims Act (see § 810 et seq.).

### E. *The Trial Court's Order and Judgment*

At the hearing on the city's demurer, plaintiffs reiterated their argument that the decisions by city employees did not involve discretion and therefore governmental

9

immunity did not apply. Plaintiffs also contended that the issue of immunity could not be decided at the demurrer stage. Rather, an evidentiary issue existed regarding whether a city employee made a "conscious decision weighing pluses and minuses" in a particular case. Plaintiffs argued that there was no evidence regarding "what went through the mind of the approving planning official" when the windows were approved.

After the hearing on the city's demurrer, the trial court filed an order sustaining the demurrer without leave to amend. The court reasoned as follows.

Regarding whether plaintiffs timely presented a government claim and whether the city was estopped from asserting noncompliance by plaintiffs, the court found that plaintiffs, by their own allegations, could not rely on estoppel after they were told in mid-October 2014, that the city would not take any action regarding the south side windows unless plaintiffs completed an appropriate city form. The court determined that within one year thereafter, on October 8, 2015, plaintiffs timely hand-delivered a letter to the city that substantially complied with the claim presentation requirement.

Regarding immunity under section 818.4, the trial court determined that the city's conduct relating to issuance of the building permit involved discretionary activity rather than a mandatory duty, that such a finding could be made on demurrer, and that the city was therefore immune from liability. In view of the ruling in the city's favor regarding immunity, the court did not reach the issue of whether administrative mandamus was plaintiffs' exclusive remedy.

A judgment of dismissal against plaintiffs was subsequently filed.

## IV. DISCUSSION

Plaintiffs contend the trial court erred in sustaining the demurrer without leave to amend on the ground that the city was immune from liability. Plaintiffs also argue that they sufficiently alleged the timely presentation of a government claim based on the doctrines of substantial compliance, equitable estoppel, and/or equitable tolling, and that

10

the city is precluded from contending that plaintiffs cannot seek relief due to their failure to pursue the remedy of administrative mandamus.

The city contends that plaintiffs' government claim was not timely presented, and that the doctrines of equitable estoppel, equitable tolling, and substantial compliance do not excuse their late claim. The city also argues that it was statutorily immune from liability for negligence.

We first set forth the standard of review before analyzing the issue of the city's statutory immunity, which we find dispositive.

### A. *Standard of Review*

On appeal, "the plaintiff bears the burden of demonstrating that the trial court erred" in sustaining the demurrer. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) In reviewing "an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.' " (*Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.) We assume the truth of all facts properly pleaded by the plaintiff. (*Lungren*, *supra*, 14 Cal.4th at p. 300.) "We also accept as true all facts that may be implied or inferred from those expressly alleged. [Citations.]" (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 633, fn. 3.) We " 'give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. [Citations.] We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.' [Citation.]" (*Lungren*, *supra*, at pp. 300-301.) If the facts appearing in exhibits attached to the complaint contradict the allegations in the pleading, the facts in the exhibits will be given precedence. (*Dodd*, *supra*, 222 Cal.App.3d at p. 1627.) "We may also consider matters that have been judicially noticed. [Citations.]" (*Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.)

"We will affirm the court's ruling if it is correct under any legal theory raised in the demurrer, whether the court relied on the theory or not. [Citation.]" (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.) Where a demurrer is based upon an

affirmative defense, such as statutory immunity, the demurrer "will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183.)

If the trial court did not grant leave to amend, we review that ruling for abuse of discretion. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Ibid.*)

## B. *Public Entity Immunity*

On appeal, plaintiffs contend that the issue of whether the city is immune from liability for negligence in issuing preliminary and final approvals of the new residence "is an evidentiary matter" that cannot be determined on demurrer. Alternatively, plaintiffs argue that although the city's preliminary approval of the new residence may be a discretionary decision subject to immunity, the city's final approval "merely involved" comparing the new residence with the originally approved plans. According to plaintiffs, the city's negligence "in failing to take note that the second floor windows of the New Residence diverged from the approved plans" is not subject to immunity under section 818.4.

The city contends that it was immune from liability for issuing a building permit, for the alleged negligent inspection of property, and the alleged failure to enforce city ordinances.

## 1. Legal Principles Regarding a Public Entity's Tort Liability and Immunity

With respect to a public entity's liability for injuries, "[u]nder the Government Claims Act (Gov. Code, § 810 et seq.), a public entity is *not* liable '[e]xcept as otherwise provided by statute.' (Gov. Code, § 815; . . .) If the Legislature has not created a statutory basis for it, there is no government tort liability. [Citation.] The Government Claims Act includes a broad provision for liability in respondeat superior: 'A public entity is liable for injury proximately caused by an act or omission of an employee of the

12

public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . .' (Gov. Code, § 815.2, subd. (a).) Public employees are liable for their torts 'to the same extent' as private persons, absent statutory provision to the contrary. (§ 820, subd. (a).)" (*State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1009.)

Generally, however, "a public entity is *not* liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (§ 815.2, subd. (b), italics added.) For example, public employees have immunity with respect to the issuance of a permit. (§ 821.2.)[3]

Likewise, section 818.4, which the trial court determined was the basis for the city's immunity in this case, expressly states: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." The legislative committee comment to section 818.4 explains that " '[u]nder this section, for example, . . . *a city is immune if it issues or refuses to issue a building permit, even though negligence is involved in issuing or failing to issue the order or permit*.' (Italics added.)" (*Morris*, *supra*, 18 Cal.3d at pp. 919-920 (conc. opn. of Clark, J.); see *State of California v. Superior Court* (1974) 12 Cal.3d 237, 246 (*State of California*) [observing that "[s]everal cases have held that [sections 818.4 and 821.2] preclude damages against a city or a public employee for the refusal to issue a permit"].)

---

[3] Section 821.2 states: "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

13

Immunity under section 818.4 "attaches only to discretionary activities." (*Morris*, *supra*, 18 Cal.3d at p. 912.) Section 818.4's "language explicitly limits immunity to instances 'where the public entity or an employee of the public entity is authorized *to determine whether or not* such [permit] should be issued [or] denied. . . .' (Italics added.) [Citations.] [¶] A public entity, of course, does not have authority to determine 'whether or not' to issue a permit when it only performs a ministerial, nondiscretionary duty. In such cases, the 'basic policy decision' has already been made at a different governmental level. [Citation.]" (*Morris*, *supra*, at p. 912.)

Generally, "[t]he issuance of building permits . . . is a discretionary function. The permit process not only provides a means of ensuring that structures meet health, safety, and other requirements, it also subserves the public policies or goals of general land use planning. . . . [A] building official has no mandatory duty to issue any particular building permit at all, even if a proposed application and plan meet all existing code and regulatory requirements which would be applicable to a proposed project." (*Thompson v. City of Lake Elsinore* (1993) 18 Cal.App.4th 49, 57, fn. omitted (*Thompson*).) Courts have thus "h[e]ld[] that the decision whether or not to issue a building permit is the sort of discretionary decision covered by Government Code sections 818.4 and 821.2." (*Id.* at p. 55 [citing cases].) Moreover, where the decision to issue a permit is discretionary, immunity may attach to "integral parts of the process leading to the grant or denial" of the permit, such as the gathering and preliminary analysis of evidence. (*Engel v. McCloskey* (1979) 92 Cal.App.3d 870, 881 (*Engel*); see *id.* at pp. 882-883.)

In contrast, in *Morris*, *supra*, 18 Cal.3d 901, the relevant decision regarding issuance of building permit did not involve discretion. In *Morris*, an injured construction worker was unable to obtain workers' compensation benefits because his employer had failed to obtain workers' compensation insurance. (*Id.* at p. 905.) The injured construction worker sued the county for damages for his uncompensated injuries. (*Id.* at pp. 904, 905.) The California Supreme Court determined that the county was not entitled

14

to immunity under section 818.4 because the county was required by Labor Code section 3800 to ensure before issuing a building permit that the applicant for the permit (the injured worker's employer) had adequate workers' compensation insurance coverage. (*Morris*, *supra*, at pp. 904, 905.) The court explained that under Labor Code section 3800 "counties retain no discretion to waive such a requirement; . . . the Legislature has reached the basic policy decision that a 'certificate of insurance' should be a mandatory prerequisite to the issuance of a building permit. Under these circumstances, . . . the county cannot claim the immunity afforded by section 818.4." (*Morris*, *supra*, at p. 916.)

With these general principles in mind, we turn to plaintiffs' specific contentions on appeal.

## 2. Analysis

### a. Whether immunity under section 818.4 may be decided on demurrer

First, plaintiffs contend that the trial court erred in determining on demurrer that the city was immune from negligence liability under section 818.4. Plaintiffs observe that section 818.4 "applies only to discretionary decisions of basic policy on whether or not to issue the permit in question." Plaintiffs contend that "such a discretionary decision must actually have been made before immunity will apply," and that "it cannot be determined at the pleading stage whether a discretionary decision at the policy level was made." In support of this contention, plaintiffs quote from *Johnson v. State of California* (1968) 69 Cal.2d 782 (*Johnson*) and *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780 (*Lopez*).

We are not persuaded by plaintiffs' contention. The portions of *Johnson* and *Lopez* relied on by plaintiffs do not address immunity under section 818.4.

In *Johnson*, the California Supreme Court addressed a different immunity provision – section 820.2. (*Johnson*, *supra*, 69 Cal.2d at p. 786.) Section 820.2 provides

15

that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the *result of the exercise of the discretion* vested in him, whether or not such discretion be abused." (Italics added.) In the context of discussing section 820.2, the court explained in a footnote that the purpose of immunity for discretionary activities is "to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision. [Citations.]" (*Johnson*, *supra*, at pp. 794-795, fn.8.)

Subsequently, in *Lopez*, the California Supreme Court again addressed immunity under section 820.2. (*Lopez*, *supra*, 40 Cal.3d at p. 793.) The court reiterated that "[s]ection 820.2 provides immunity only for the acts or omissions that are 'the result of the *exercise* of the discretion' vested in a public employee . . . ." (*Id.* at p. 794.) Quoting the above passage from *Johnson* regarding the public entity's burden to prove that its employee consciously exercised discretion (see *Johnson*, *supra*, 69 Cal.2d at p. 794, fn.8), the court in *Lopez* explained that "[s]uch a showing was not and could not have been made by [the defendant public entity] at the demurrer stage. [Citations.] It therefore would be error to sustain [the defendant public entity's] demurrer based on Government Code section 820.2." (*Lopez*, *supra*, at p. 794.)

In contrast to the language of section 820.2, which provides immunity only for acts or omissions that are "the result of the *exercise* of the discretion" vested in the public employee (italics added; see *Lopez*, *supra*, 40 Cal.3d at p. 794; *Johnson*, *supra*, 69 Cal.2d at p. 794, fn.8), the section at issue in this case—section 818.4—provides immunity whenever the public entity or its employee "*is authorized by enactment* to determine whether" a permit or other approval should be granted or denied (§ 818.4, italics added;

16

see also § 821.2). In other words, whereas section 820.2 expressly requires the "exercise" of discretion before immunity may apply, section 818.4 requires only that the discretion be "authorized by enactment."

Consistent with this interpretation, in *Engel*, *supra*, 92 Cal.App.3d 870, the appellate court determined that where the "*specific* immunity" pertaining to the issuance of permits and licenses under section 818.4 applies, it is "unnecessary to engage in any analysis under *Johnson v. State of California*, 69 Cal.2d 782, of whether the investigation involved the 'exercise of discretion' vested in [the public employees] for purposes of the *general* immunity for discretionary acts in Government Code section 820.2." (*Engel*, *supra*, at p. 883.) The appellate court concluded in the case before it that the plaintiff's cause of action for negligence was precluded by the specific immunity of section 818.4, and that the trial court properly sustained demurrers to the complaint seeking damages against public entities and employees. (*Id.* at pp. 874, 880-883, 887.)

We further observe that subsequent to the California Supreme Court's statement in *Johnson* that a public entity must prove its employee consciously exercised discretion in order for immunity to apply under section 820.2 (see *Johnson*, *supra*, 69 Cal.2d at p. 794, fn.8), the California Supreme Court has applied section 818.4, regarding immunity for issuance of permits, in the context of demurrers. For example, in *Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110 (*Selby*), the California Supreme Court determined that section 818.4 barred a cause of action for damages against a city for refusal to issue a building permit, and therefore the trial court properly sustained a demurrer to the cause of action. (*Selby*, *supra*, at pp. 121, fn. 6, 127, 128.) Similarly, in *State of California*, *supra*, 12 Cal.3d 237, the California Supreme Court determined that the immunities set forth in sections 818.4 and 821.2 barred the land developers' cause of action to the extent they sought damages for a public entity's refusal to issue a permit, and therefore the trial court erred in overruling the public entity's demurrer to the cause of action seeking damages. (*State of California*, *supra*, at pp. 245-247, 255.)

17

We therefore determine that the trial court could properly decide on demurrer whether the city was immune from liability under section 818.4.

### b. Whether immunity under section 818.4 applied to the city's final approval of the new residence

Second, we understand plaintiffs to contend that, whereas the city's preliminary approval of the new residence may have involved a discretionary decision subject to immunity under section 818.4, the city's final approval did not involve the requisite discretion. Instead, according to plaintiffs, the city's "final approval merely involved the operational comparison of the [n]ew [r]esidence with the originally approved plans . . . . In making that comparison, the [c]ity's alleged negligence in failing to take note that the second floor windows of the [n]ew [r]esidence diverged from the approved plans is not immunized under [section] 818.4."

Before considering the substance of plaintiffs' contention, we first set forth the municipal code section and city guidelines relied on by plaintiffs.

During the relevant time, Palo Alto Municipal Code former section 18.12.110 applied "to the construction of a new singly developed two-story structure; the construction of a new second story; or the expansion of an existing second story by more than 150 square feet . . . ." (*Id.*, former § 18.12.110, subd. (b) (2005).) Former section 18.12.110 was part of a chapter in the Palo Alto Municipal Code that had the following "goals and purpose": "(1) Preserve the unique character of Palo Alto neighborhoods; [¶] (2) Promote new construction that is compatible with existing residential neighborhoods; [¶] (3) Encourage respect for the surrounding context in which residential construction and alteration takes place; [¶] (4) *Foster consideration of neighbors' concerns with respect to privacy*, scale and massing, and streetscape; and [¶] (5) Enable the emergence of new neighborhood design patterns that reflect awareness of each property's effect upon neighboring properties." (*Id.*, former § 18.12.110, subd. (a) (2005), italics added.) However, the Palo Alto Municipal Code

18

also expressly stated that "[t]his program is intended *only to mitigate* the effects of second story construction on neighboring homes, and *should not be construed to prohibit* second story construction when this title would otherwise permit it." (*Id.*, former § 18.12.110, subd. (a) (2005), italics added.)

The city's municipal code required that "guidelines" be issued "to direct staff and project applicants in implementing the goals and purposes and other provisions" pertaining to single-family residences. (Palo Alto Mun. Code, former § 18.12.110, subd. (c) (2005).) The city could grant "individual review approval" only if the application was "consistent with the individual review guidelines." (*Id.*, former § 18.12.110, subd. (d) (2005).) Further, "[i]n granting individual review approvals, reasonable conditions or restrictions [could] be imposed if appropriate or necessary to protect the public health, safety, general welfare, or convenience, and to secure the purposes of this title (Zoning)." (*Id.*, former § 18.12.110, subd. (e) (2005).)

Applications for individual review approval were to be "reviewed and acted upon as set forth in [Palo Alto Municipal Code] Section 18.77.075." (Palo Alto Mun. Code, former § 18.12.110, subd. (f) (2005).) Changes could be approved "to a previously approved individual review project without following the procedure set forth in [Palo Alto Municipal Code] Section 18.77.075 if those changes [did] not affect compliance with the individual review guidelines. Examples of such changes include[d]:
[¶] (1) Reductions in window or door size, or reductions in the number of windows.
[¶] (2) Changes to aspects of the project not reviewed under individual review, such as materials or non-street-facing first story windows. [¶] (3) Changes that [did] not affect privacy/streetscape. [¶] (4) Increases in setbacks. [¶] (5) Reductions in second floor mass that [did] not affect privacy or streetscape." (*Id.*, former § 18.12.110, subd. (h) (2005).)

The city's single-family individual review guidelines, which were attached to plaintiffs' second amended complaint, included a guideline regarding "placement of

19

second story windows and decks for privacy." (Capitalization omitted.) The "[a]pproval [c]riterion" for this guideline stated that "[t]he size, placement and orientation of second story windows and decks shall limit direct sight lines into windows and patios located at the rear and sides of adjacent properties in close proximity." However, the guideline also stated that "[c]omplete privacy is not a realistic expectation. Designs should reduce opportunities for individuals to be casually observed by others and minimize intrusions upon pre-existing privacy situations, such as the main outdoor living area or primary patio." (Italics omitted.) "Key [p]oints" regarding this guideline included the following: "Avoid windowless building walls, especially walls visible from the street. Use smaller upper floor windows and/or selective glazing at privacy sensitive locations. Windows may still remain operable, particularly for ventilation for bathrooms and egress for bedrooms."

On appeal, plaintiffs expressly concede that the city's individual review guidelines did not impose a mandatory duty on the city to protect plaintiffs' privacy.

However, for the first time in their reply brief on appeal, plaintiffs contend that Palo Alto Municipal Code section 18.12.110, subdivision (h) imposed a mandatory duty on the city's planning director "not to allow privacy-intrusive divergencies in building projects after the rigorous Individual Review process has been completed." Plaintiffs contend that "when faced with noncompliant changes in a previously approved individual review project, the Planning Director lacks authority to decide unilaterally to approve or disapprove the changes, but instead is authorized only to subject the changes to the procedure set forth in Section 18.77.075 of the [Palo Alto] Municipal Code."[4] Contrary

---

[4] To support this argument raised for the first time in their reply brief, plaintiffs have filed a motion requesting judicial notice of Palo Alto Municipal Code section 18.77.075. (See Evid. Code, §§ 452, subd. (b) [judicial notice may be taken of "[r]egulations and legislative enactments issued by or under the authority of . . . any public entity in the United States"], 200 [a " '[p]ublic entity' " includes a city].) Although the version of Palo Alto Municipal Code section 18.77.075 attached to plaintiffs' motion is from 2016, which is after the events alleged in plaintiffs' second

to their argument in their opening brief on appeal that the city was "negligen[t] in *failing to take note* that the second floor windows of the New Residence diverged from the approved plans," plaintiffs in their reply brief argue that the city "*knew that noncompliant changes had been made* to the . . . project, namely that second floor casement windows had been installed in lieu of double-hung windows, and the windows were larger than originally approved." (Italics added.) Plaintiffs contend that city employees "thus lacked authority to take any action on the project other than to reinstitute the procedure under [Palo Alto] Municipal Code [section] 18.77.075 for determination of whether to approve or disapprove the noncompliant changes."[5] Plaintiffs argue that the city was therefore "not immunized as to that unilateral approval because the involved City officials were not 'authorized by enactment to determine whether or not [the final approval] should be issued [or] denied' " under Government Code section 818.4.

As we have stated, plaintiffs' contention that the city and its employees did not have the authority to approve noncompliant changes without reinstituting the procedure set forth in Palo Alto Municipal Code section 18.77.075 is an issue that was not raised below or in plaintiffs' opening brief on appeal. Appellate courts ordinarily will not consider a new issue raised for the first time in the reply brief. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.)

---

amended complaint, the city has not objected to plaintiffs' motion. We grant plaintiffs' request for judicial notice.

[5] Palo Alto Municipal Code section 18.77.075 sets forth the review process for individual review applications and other permits. Pursuant to this section, after an application has been submitted, notice must be given to adjacent property owners regarding the proposed project, a comment period is available, a proposed written decision must be prepared regarding approval or denial of the application, a hearing may be requested before the proposed decision becomes final, and the decision may be appealed to the city council. (Palo Alto Mun. Code, § 18.77.075, subds. (b)-(g).)

21

Even if plaintiffs had properly raised this issue, we are not persuaded by plaintiffs'
contention. Palo Alto Municipal Code former section 18.12.110, subdivision (h)
provides that the planning director "may approve changes to a previously approved
individual review project *without* following the procedure set forth in Section 18.77.075
*if those changes do not affect compliance with the individual review guidelines*."
(Former Palo Alto Mun. Code, § 18.12.110, subd. (h) (2005), italics added.) Plaintiffs
"concede" that the individual review guidelines themselves "do not impose on the
Individual Review process a mandatory duty to protect [plaintiffs'] privacy." Given that
the individual review guidelines do not impose a mandatory duty on the city and instead
implicate a discretionary decision on the part of the city as to whether a particular project
follows the guidelines, the question of whether any *changes* to a project's previously
approved individual review "affect compliance with the individual review guidelines"
(former Palo Alto Mun. Code, § 18.12.110, subd. (h) (2005)) also necessarily implicates
a discretionary decision on the part of the city.

We therefore find plaintiffs' reliance on *Morris*, *supra*, 18 Cal.3d 901, unhelpful
because, in that case, the county "retain[ed] no discretion to waive" Labor Code
section 3800's requirement that an applicant for a building permit have adequate
workers' compensation coverage before issuing a building a permit. (*Morris*, *supra*, 18
Cal.3d at p. 916.) In contrast, in this case, the city planning director was "authorized by
enactment to determine" (§ 818.4; see also § 821.2) whether any changes from the
previously approved individual review of the new residence did "not affect compliance
with the individual review guidelines" (former Palo Alto Mun. Code, § 18.12.110,
subd. (h) (2005)) such that the procedure set forth in Palo Alto Municipal Code
section 18.77.075 did not need to be reinstated or followed. Further, even if the city or its
employee was negligent with respect to this decision, immunity under section 818.4
would still bar a claim for damages. (See *Engel*, *supra*, 92 Cal.App.3d at p. 881 [where
the decision to issue a permit is discretionary, immunity also attaches to "integral parts of

the process leading to the grant or denial" of the permit, such as the gathering and preliminary analysis of evidence]; *Burchett v. City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1480 [immunity under § 818.4 applies " ' "even though negligence is involved in issuing or failing to issue the order or permit" ' "].)

In sum, immunity under section 818.4 applies to a city's issuance of a building permit even if " 'negligence is involved in issuing . . . the order or permit.' " (*Morris*, *supra*, 18 Cal.3d at p. 920 (conc. opn. of Clark, J.), italics omitted.) Numerous courts have thus "h[e]ld[] that the decision whether or not to issue a building permit is the sort of discretionary decision covered by Government Code sections 818.4 and 821.2." (*Thompson*, *supra*, 18 Cal.App.4th at p. 55 [citing cases].) Plaintiffs in this case fail to demonstrate that this well-established precedent does not apply, and that the trial court erred in determining that the city was immune from liability for negligence pursuant to section 818.4. Plaintiffs also fail to demonstrate that the court abused its discretion in denying leave to amend. We therefore conclude that the trial court properly sustained the city's demurrer to plaintiffs' second amended complaint for negligence without leave to amend.

## V. DISPOSITION

The judgment is affirmed.

23

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*Wang et al. v. City of Palo Alto*
**H045716**